JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AROGANT HOLLYWOOD, ALISON HELEN FAIRCHILD, <br><br> PLAINTIFF(S) <br><br> v. <br><br> AIRBNB INC., et al., <br><br><br> DEFENDANT(S) | CASE NUMBER <br><br> CV 17-2253-JGB (GJS) <br><br> **ORDER RE REQUEST TO PROCEED** <br> *IN FORMA PAUPERIS* |

**IT IS ORDERED** that the Request to Proceed *In Forma Pauperis* is hereby GRANTED.

_____          _____
Date                                                              United States Magistrate Judge

**IT IS RECOMMENDED** that the Request to Proceed *In Forma Pauperis* be **DENIED** for the following reason(s):

☒ Inadequate showing of indigency          ☐ District Court lacks jurisdiction

☐ Legally and/or factually patently frivolous          ☐ Immunity as to _____

☒ Other:  Failure to state a claim upon which relief can be granted.

_____

Comments:

See Attachment.

May 17, 2017                                          _____
Date                                                              United States Magistrate Judge

**IT IS ORDERED** that the Request to Proceed *In Forma Pauperis* is hereby:

☐ GRANTED

☒ DENIED (see comments above).  IT IS FURTHER ORDERED that:

    ☐ Plaintiff SHALL PAY THE FILING FEES IN FULL within 30 days or this case will be dismissed.

    ☒ This case is hereby DISMISSED immediately.

    ☐ This case is hereby REMANDED to state court.

May 18, 2017                                          _____
Date                                                              United States District Judge

### Attachment for *Arogant Hollywood, et al. v. AirBnB Inc., et al.*
### CV 17-2253-JSB (GJS)

Plaintiffs Arogant Hollywood ("Hollywood") and Alison Helen Fairchild have filed a verified Complaint in this District and seek leave to proceed on an *in forma pauperis* ("IFP") basis.[1]  The Complaint is brought against AirBnB Inc. ("ABB") and three men alleged to be its "multibillionaire cofounders."  The case stems from Plaintiffs' rental of an ABB property and removal several days later after the police were called, based on the following allegations (Complaint ¶¶ 11-21.)

On March 25, 2015, through ABB, Hollywood booked and prepaid for a room in the home of Cecilia Shutan ("Shutan") for six nights, which was advertised as being wheelchair accessible.  On March 26, 2015, Hollywood and Fairchild moved into the room, which proved to be unsatisfactory for a number of reasons, including that it was not handicap accessible, was not the room Hollywood had booked online, and appeared to be Shutan's personal bedroom.  On March 27 and 28, 2016, Shutan repeatedly entered Plaintiffs' room.  On March 29, 2015, Hollywood confronted Shutan about smoking a cigarette in the home and the problems he and Fairchild were having with their room rental.  Hollywood accused Shutan of fraud and operating an illegal ABB rental.  He demanded a full refund of the payment he had made for six nights' stay, told Shutan she would be sued for fraud, discrimination and forceful entry if she tried to kick Hollywood and Fairchild out, and told Shutan the only way the two of them could be lawfully removed was through an unlawful detainer proceeding.  Shutan called ABB and the LAPD at 1:00 p.m. and 2:00 p.m., respectively, and falsely advised that she was afraid of Hollywood, he had threatened her, and she did not feel safe in her home with Hollywood there.

A half hour after Shutan's 2:00 p.m. call, LAPD officers arrived at Shutan's home and advised Hollywood that:  Shutan had told them Hollywood had threatened her; she wanted him removed from her home; and the officers were there to assist with Hollywood's removal.  Hollywood denied having threatened Shutan, claimed he had recorded his conversations with her, and said the officers

---

[1]    As discussed in two of their earlier cases filed in this District, in 2016, the Los Angeles Superior Court has declared Hollywood and Fairchild to be vexatious litigants.  *See* Case No. CV 16-6392 [Dkt. 5], and Case No. CV 16-6459-JGB (GJS) [Dkt. 14].

1

could not kick Fairchild and him out.  The LAPD officers told Hollywood that if he did not leave, he would be arrested for trespassing on private property.  Fairchild was upset and angry.  Plaintiffs do not allege what happened next, but apparently they left Shutan's home that day, because they allege that they had to leave with a suitcase, had to schedule transit to their storage facility for their extra belongings, and slept outside on March 29, 2015.  The next day, Hollywood received an e-mail from ABB stating that his profile had been disabled and he was not allowed to participate in ABB going forward.

Plaintiffs seek compensatory and punitive damages of at least $20 million each, as well as statutory damages.

The Court notes that, in their related verified Complaint arising out of their removal from Shutan's home filed against the City of Los Angeles, the LAPD, and its Chief in CV 17-2449-JGB (GJS), Plaintiffs allege that the events in question occurred approximately one week earlier, *i.e.,* the room in Shutan's home was rented through ABB on March 16, 2015, Plaintiffs moved in on March 17, 2015, and Plaintiffs vacated the room on March 22, 2015.  Moreover, the instant Complaint is internally inconsistent with respect to the dates at issue.  Partway through the Complaint, Hollywood alleges that the incident – the police telling him he had to leave Shutan's home – occurred on March 22, 2015.  (Complaint ¶¶ 64, 70-71.)

The Complaint alleges 18 causes of action.  Five of them purport to invoke federal question jurisdiction; the rest are brought under California law.  Claim One is brought by Fairchild under 42 U.S.C. § 12203 against ABB, alleging that ABB violated the ADA due to Fairchild having to vacate Shutan's home.  Claim Six is brought by Hollywood under 42 U.S.C. § 1981 against ABB, alleging that ABB refused to "contract" with Hollywood because of his race (African-American) although it contracts with white tenants.  Claim Seven is brought by Fairchild and Hollywood under 42 U.S.C. § 1985(3) against ABB and its three "cofounders," alleging that they conspired to discriminate against Plaintiffs and remove them from Shutan's home.  Claim Eight is brought by Fairchild and Hollywood under 42 U.S.C. § 1986 against ABB and its three "cofounders," alleging that they neglected to prevent the conspiracy in which they are alleged to have participated.  Claim Sixteen is brought by Fairchild and Hollywood under 42 U.S.C. § 1983 against ABB and its three "cofounders," alleging that they conspired with the LAPD to remove Plaintiffs from Shutan's home and thereby acted under color of state law.  Claim Seventeen is brought by Fairchild and Hollywood under 42 U.S.C. § 1983 against ABB and its three "cofounders," alleging that they violated Plaintiffs'

2

rights under the Fourteenth Amendment, including to real property, by removing them from Shutan's home without first obtaining a writ of possession and by utilizing the assistance of the LAPD to do so.

Under 28 U.S.C. § 1915(a)(1), a litigant may be granted leave to proceed IFP upon an adequate showing that he or she is unable to pay the filing fee. Under 28 U.S.C. § 1915(e)(2), the Court must dismiss a case sought to be brought on an IFP basis if it determines that an allegation of poverty is untrue or the complaint fails to state a claim upon which relief can be granted. Having reviewed the Complaint carefully, as well as the various IFP applications filed by Hollywood and Fairchild,[2] the Court concludes that leave to proceed on an IFP basis should be denied and the Complaint should be dismissed without leave to amend, for the following reasons.

Hollywood and Fairchild have filed IFP applications recently in this District in other actions. In those applications, Hollywood stated repeatedly, under penalty of perjury, that he had a Santander bank account (No. 9996834042), which had the following bank balances: $2,481 in December 2016; $2,924 in January 2017; and either $775 or $820 in February 2017. *See* Case No. CV 17-864-RGK (AGR) [Dkt. 17]; Case No. 17-1143-JAK (RAOx) [Dkt. 5]; Case No. CV 17-2449-JGB (GJS) [Dkt. 3]; Case No. CV 17-2450-JGB (GJS) [Dkt. 4]; and Case No. CV 17-2451-JGB (GJS) [Dkt. 5]. In these same cases in which she was a plaintiff, Fairchild stated repeatedly, under penalty of perjury, that she had an Amex Centurion Bank account (No. 21002435292), which had the following bank balances: $2,585.40 in November 2016; $838 in December 2016; $915.72 in January 2017; and $890 in February 2017. *See* Case No. CV 17-864-RGK (AGR) [Dkt. 19]; Case No. 17-1143-JAK (RAOx) [Dkt. 3]; Case No. CV 17-2449-JGB (GJS) [Dkt. 4]; and Case No. CV 17-2451-JGB (GJS) [Dkt 6]. Both Hollywood and Fairchild made the same sworn representations as to the funds in these accounts in *this* case [Dkt. 3, 5].

After these IFP applications were filed, numerous United States District Judges in the above cases – including the United States District Judge to whom this case formerly was assigned and the United States Judge to whom this case has been transferred – found that these sworn representations presented an inadequate showing of indigency and, thus, warranted denying Hollywood and Fairchild leave

---

[2]     Hollywood and Fairchild have filed multiple IFP documents in this case – original, supplemental, and amended.  [Dkt. 2-5, 16-19.]

to proceed IFP. *See* Case No. 17-864-RGK (AGR) [Dkt. 24]; Case No. 17-1143-JAK (RAOx) [Dkt. 33]; Case No. CV 17-2253-JFW (AFMx) [Dkt. 14-15]; Case No. CV 17-2449-JGB (GJS) [Dkt. 14]; Case No. CV 17-2450-JGB (GJS) [Dkt. 10]; and Case No. CV 17-2451-JGB (GJS) [Dkt. 14].

Having suffered denials of their IFP applications, Hollywood and Fairchild began filing amended and different sworn statements as to the funds in these two bank accounts, both in this and other cases. These filings set forth funds for the accounts that not only were grossly reduced from those set forth above but changed with each filing. In another case filed in this District on April 20, 2017 – Case No. CV 17-3008-JGB (GJS) – Hollywood made a new set of sworn representations as to the same Santander bank account, now stating under penalty of perjury he had only $47 in the account in December 2016 (instead of $2,481), only $90 in January 2017 (instead of $2,924), and only $35 in February 2017 (instead of $820). [Dkt. 5.] In the same 17-3008 case, also on April 20, 2017, Fairchild made a new set of sworn representation as to the same Amex Centurion account, now stating under penalty of perjury that she had only $27 in the account in November 2016 (instead of $2,585,40), only $45 in December 2016 (instead of $838), only $43 in January 2017 (instead of $915.72), and only $62 in February 2017 (instead of $890). [Dkt. 6.]

Approximately one week later, after the prior United States District Judge denied their IFP applications in this case, Hollywood and Fairchild filed amended IFP applications that stated entirely different sets of balances for these same two bank accounts. Hollywood now stated, again under penalty of perjury, that as to the same Santander bank account, he had $273 in the account in December 2016 (instead of $2,481 or $47), $282.21 in January 2017 (instead of $2,924 or $90), and $116.34 in February 2017 (instead of $820 or $35). [Dkt. 17.] Fairchild now stated, also again under penalty of perjury, that as to the same Amex Centurion account, she had $296.26 in the account in November 2016 (instead of $2,585.40 or $27), only 53 cents in December 2016 (instead of $838 or $45), only 32 cents in January 2017 (instead of $915.72 or $43), and only $13.74 in February 2017 (instead of $890 or $62). [Dkt. 16.] Hollywood and Fairchild also filed amended IFP applications setting forth this same third set of bank account balances in Case No. CV 17-1143-JAK (RAOx) [Dkt. 36, 38.] In both cases, they filed copies of bank statements[3] that failed to support their third set of sworn allegations given

---

[3]   Case No. CV 17-1143-JAK (RAOx) [Dkt. 39]; and Case No. CV 17-2253-JFW (AFMx) [Dkt. 18].

4

that:  the statements for Hollywood's account show different (and higher) balances for the months in question than stated; and the bank statements submitted by Fairchild pertain to what appears to be a different type of financial account bearing a different account number.

Given the ongoing, substantial discrepancies in Plaintiffs' sworn assertions regarding the funds in their bank accounts, which alter once they receive adverse IFP rulings, there is no information before the Court that competently establishes an adequate showing of indigency.  Indeed, what is before the Court raises troubling questions as to the accuracy and credibility of Plaintiffs' shifting sworn representations about their financial status.  These continued material discrepancies in sworn statements provide a further basis for *again* finding that Hollywood and Fairchild have not adequately shown the requisite indigency to warrant leave to proceed IFP in this case.

This reason alone is sufficient to warrant denying Plaintiffs' amended IFP applications and dismissing this case.  The Court notes, however, that there are numerous defects in the substance of the Complaint itself with respect to the claims alleged to serve as a basis for federal court jurisdiction.  Without addressing them all, these include the following:

**First**, the eighth claim brought under 42 U.S.C. § 1986 plainly is time-barred on the face of the Complaint.  The statute of limitations is grounds for *sua sponte* dismissal of an *in forma pauperis* complaint where the defense is complete and obvious from the face of the pleading.  *See Franklin v. Murphy*, 745 F.2d 1221, 1228-29 (9th Cir. 1984).  Section 1986 claims are subject to a one-year statute of limitations set forth in the statute itself.  Although state statute of limitations and tolling principles apply, "[f]ederal law determines when a federal civil rights claim accrues."  *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008).  Under federal law, a civil rights claim accrues when the plaintiff knows or has reason to know of the injury that forms the basis of the claim.  *Id.; see also TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1991).  "[I]t is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."  *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (internal citations and punctuation omitted).

Here, the allegations of the Complaint make clear that Plaintiffs' civil rights claims accrued on March 29, 2015, the date on which they allege they were wrongfully forced to leave Shutan's home in violation of their constitutional rights. The Complaint was not filed until March 22, 2017 – almost two years after any civil rights claims accrued. Plaintiff's Section 1986 claim, therefore, is untimely by close to a year. Accordingly, absent equitable tolling, the Section 1986 claim alleged in the Complaint is barred by the applicable statute of limitations.

The burden to plead facts that would give rise to equitable tolling falls upon the plaintiff. *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993); *see also Kleinhammer v. City of Paso Robles*, 385 Fed. App'x 642, 643 (9th Cir. 2010). Hollywood and Fairchild have not met their burden with respect to their Section 1986 claim and there is no basis to believe he could do so consistently with Federal Rule of Civil Procedure 11. Plaintiffs filed two cases in this District in August 2016 – Case Nos. CV 16-6392-JGB (GJS) and CV 16-6459-JGB (GJS) – in which they were denied leave to proceed on an IFP basis. As discussed in the Court's IFP denial orders in those cases (CV 16-6392, Dkt. 5; CV 16-6459, Dkt. 14), in addition to those two federal lawsuits, Plaintiffs filed at least 25 cases in the Los Angeles Superior Court between May 2015 and January 2016, as well as at least 11 state court appeals in 2015 and 2016. The fact that Plaintiffs were able to litigate so actively in the state courts during this period – indeed so actively that they were determined to be vexatious litigants – coupled with the fact that they were able to file two lengthy federal civil rights complaints in this District in August 2016, precludes finding that any event or circumstance could have impeded their ability – between March 30, 2015, and March 29, 2016 – to bring a timely Section 1986 federal civil rights lawsuit based on the March 29, 2015 events at issue in the present Complaint.

**Second**, the first claim is an ADA retaliation claim brought by Fairchild under 42 U.S.C. § 12203 against a private entity and its founders. As relief, she seeks to recover compensatory damages. (Complaint, ¶ 34.) Her claim, however is not cognizable because, as the Ninth Circuit and other Circuits have held, neither compensatory nor punitive damages are available for such a Section 12203 claim. Rather, the only relief available is that pursuant to 42 U.S.C. § 2005e(g)(1), which Fairchild does not seek nor could she under the facts alleged in this case. *See, e.g., Alvarado v. Cajun Operating Co.*, 588 F.3d 1262, 1264-70 (9th Cir. 2009); *see also D'Lil v. Best Western Encina Lodge & Suites,* 538 F.3d 1031, 1036–37 (9th Cir. 2008) ("In the context of a suit for injunctive relief, [the actual or imminent injury requirement for standing] may only be satisfied where a plaintiff demonstrates a sufficient likelihood that he will again be wronged in a similar way.

6

That is, he must establish a real and immediate threat of repeated injury.") (citation and internal punctuation omitted).

**Third**, Plaintiffs' federal claims suffer from significant pleading deficiencies. To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Conclusory allegations are insufficient. *Iqbal*, 129 S. Ct. at 1950. Although a complaint need not set forth detailed factual allegations, "a formulaic recitation of the elements of a cause of action will not do," and the factual allegations of the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1964-65. For an allegation to be "entitled to the assumption of truth," it must be well-pleaded, that is, it must set forth a non-conclusory factual allegation rather than a legal conclusion. *Iqbal*, 129 S. Ct. at 1950.

The Complaint is lengthy – 104 pages – but remarkably bereft of any factual allegations with respect to the named Defendants. There are no allegations of fact whatsoever with respect to the three individual Defendants, other than to allege that they are the "multi-billionaire cofounders" of ABB and live and work in California. The Complaint does not allege any actual act or omission on the part of any of these three men, and there is no plausible basis for finding them liable that is alleged in the Complaint. With respect to ABB, again, there are no allegations of actual fact, with the exception of the following: "On March 22nd 2015 Defendant [ABB's] leadership of its safety and trust departments told Plaintiff Arogant Hollywood that he would have to check out March 20th 2017, despite Plaintiff Hollywood's residential rented room being fully paid for." (¶ 70); and "On March 22nd 2015 Defendant [ABB's] leadership of its safety and trust departments told Plaintiff Arogant Hollywood that if he did not vacate his residential rented room he would be arrested and prosecuted for trespassing" (¶ 71). These allegations, however, are implausible and state no basis for a viable claim against ABB, given Plaintiffs' sworn allegations that they did not rent the room in Shutan's home until three days later – on March 25, 2015 – and did not move in until March 26, 2015. The Complaint's allegations against ABB are wholly conclusory, *to wit*, that it conspired and/or discriminated against Plaintiffs or was "fully involved with the interest of having [Plaintiffs] discriminated against and removed from its premises entirely." These conclusory allegations are no substitute for the requisite factual content needed to state a plausible claim against ABB or any other Defendant. Plaintiffs complain of Shutan's behavior,

7

specifically, her call to the LAPD requesting assistance in removing Hollywood from her home, and their attempt through this Complaint to hold ABB and its founders liable for Shutan's behavior is inadequate under *Iqbal*.

**Fourth**, through the seventh, eighth, and sixteenth claims, the Complaint seeks to hold ABB and the individual Defendants liable on a theory of conspiracy and failure to prevent such conspiracy. Those who are not the principal wrongdoer may be liable if they conspired with that wrongdoer to commit the wrong at issue. *See, e.g., Lacey v. Maricopa County,* 693 F.3d 896, 935 (9th Cir. 2012) (*en banc*). The Complaint, however, fails to set forth any of the requisites of a cognizable conspiracy claim. "To prove a civil conspiracy, the plaintiff must show that the conspiring parties reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement. To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id.* (citation and internal quotation marks omitted). Conspiracy allegations "must satisfy" the *Iqbal* pleading standards. *Id.* Thus, to allege conspiracy liability against the ABB and the three individual Defendants, the Complaint is required to plead specific facts plausibly suggesting the existence of a conspiracy. *Iqbal*, 129 S. Ct. at 1949; *see also Margolis v. Ryan,* 140 F.3d 850, 853 (9th Cir. 1998) (plaintiff must allege specific, material facts to show an agreement among the alleged conspirators to violate the plaintiff's civil rights)*; Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 929 (9th Cir. 2004) ("To state a claim for conspiracy to violate constitutional rights, the plaintiff must state specific facts to support the existence of the claimed conspiracy."); *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir. 1990) ("A mere allegation of conspiracy without factual specificity is insufficient to support a claim."); *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989) (holding that conclusory allegations of conspiracy did not give rise to liability under Section 1983); *see also Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) (dismissing complaint that had "legal conclusions but no specification of any facts to support the claim of conspiracy").

The Complaint is peppered throughout with the use of the word "conspiracy," but lacks a single allegation of fact to support that legal conclusion. Instead, the Complaint sets forth only bald, conclusory assertions of a "conspiracy" and legal conclusions devoid of *any* <u>fact</u> that would support finding that a "conspiracy" existed. There is no allegation in the Complaint that, if assumed to be true, could demonstrate the requisite meeting of the minds between the purported participants in the alleged conspiracy. Plaintiffs' conspiracy allegations

8

are entirely lacking in the requisite factual content to state a factually plausible claim against ABB or any individual Defendant based on their participation in a "conspiracy" to wrongfully remove Plaintiffs from Shutan's home.  Rather, the Complaint alleges only the type of "conclusory statement" of which the Supreme Court disapproved in *Iqbal*.  Indeed, the Complaint fails entirely to allege the requisites of a tenable claim based on a conspiracy – a lynchpin element of a Section 1985(3) and a Section 1986 claim based on a violation of Section 1985(3) as is asserted by the Complaint.  *See, e.g., Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1141 (9th Cir. 2000); *Trerice v. Peterson,* 769 F.2d 1398, 1403 (9th Cir. 1985).  Thus, the seventh, eighth, and sixteenth claims fail to state a claim upon which relief can be granted against any Defendant.

**Fifth**, "[t]o prevail under 42 U.S.C. § 1983, a plaintiff must prove that he was 'deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.'" *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012) (citation omitted).  Generally, private individuals and entities do not act under color of state law for purposes of these statutory civil rights claims, and conclusory allegations that they were state actors and/or "that there was action under color of state law" are insufficient and warrant dismissal.  *Price v. State of Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991); *see also Simmons v. Sacramento Cnty. Sup'r Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003) (conclusory allegation that lawyer conspired with state actors was insufficient to state a Section 1983 claim against the lawyer).  Thus, the Court must begin "with the presumption that conduct by private actors is not state action." *Florer v. Congregation Pidyon Shevuyim*, 639 F.3d 916, 922 (9th Cir. 2011).

There is no dispute here that the Defendants are not government officials, employees, or agencies, and thus, they are not state actors as such.  The Complaint (¶ 386) admits as much.  Plaintiffs nonetheless allege that they acted under color of state law on the theory that they participated in joint activity with the LAPD and its officers who showed up in response to Shutan's call and advised Hollywood he needed to leave or he would be arrested for trespassing.  Plaintiffs allege that this purported joint activity "transformed all Defendants into state actors."  (Complaint ¶¶ 386-87.)

"The Supreme Court has articulated four tests for determining whether a [non-governmental person's] actions amount to state action: (1) the public function

9

test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 995 (9th Cir. 2013) (citation and internal punctuation omitted). Tests (1), (3), and (4) plainly are inapplicable given the Complaint's allegations. Instead, Hollywood and Fairchild plainly rely on the "joint action test," which focuses on "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002). "'Joint action' exists where the government affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party," *Ohno*, 723 F.3d at 996, or otherwise has "so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity," *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989). A bare allegation of joint action is insufficient to establish that a private party acted under color of state law and to prevent dismissal of a Section 1983 claim. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 899 (9th Cir. 2008).

The Complaint's allegations plainly fail to satisfy these requirements. As a threshold matter, the Complaint alleges expressly (¶¶ 18-19) that it was Shutan who called the LAPD and that the officers who responded indicated that they were responding to her call and what she said. While Plaintiffs later allege that ABB and its founders met and conferred with the LAPD "regarding the potential arrest, definite trespass, and definite forceful entry and wrongful eviction of Plaintiffs" and "encourage[ed]" the LAPD to assist "with a wrongful eviction and forceful entry of Plaintiff's residence without due process of law and judicial state court" (¶¶ 391-92), these allegations not only are implausible but fatally vague and bereft of facts. Plaintiffs do not allege when this alleged meeting occurred and where, who participated, how it was arranged, what was said, etc. Given the Complaint's specific factual allegations that Shutan called ABB at 1:00 p.m., called the LAPD at 2:00 p.m., and then LAPD officers arrived at her home within a half hour, it is not factually possible that this purported meeting between the founders of ABB and the LAPD, and their resulting joint plan to harm Plaintiffs, actually happened.

At most, the Complaint alleges that Shutan called the LAPD an hour after she spoke to ABB and reported that she was afraid of Hollywood, who had threatened her. Even if it can be inferred that she made the call to the LAPD upon the advice of someone at ABB, this does not, and cannot, constitute action under color of state law pursuant to the joint activity doctrine. As the Ninth Circuit has

10

repeatedly and long held, "merely complaining to the police does not convert a private party into a state actor." *Collins*, 878 F.2d at 1155; *see also Dietrich*, 548 F.3d at 900 (bare allegation that defendants "acted in concert" with police insufficient to prevent dismissal when circumstances indicated they did nothing more than summon police); *Peng v. Mei Chin Penghu*, 335 F.3d 970, 980 (9th Cir. 2003) (affirming dismissal of Section 1983 claim, because defendants' act of providing false information when summoning police, which led to plaintiff's arrest, did not constitute concerted action and, thus, no cognizable claim was stated). In addition, the mere advice by LAPD officers that Hollywood would be arrested for trespassing if he did not leave, even if assumed to be true, does not constitute the requisite action in concert to deprive Hollywood of a constitutional right. Whether or not Shutan had the right to seek law enforcement's assistance in removing Hollywood from her home, simply advising Hollywood of a possible arrest for trespassing – without anything further, such as actually arresting Hollywood for trespassing – does not render the State a joint participant in Shutan's conduct.

Critically, the Complaint does not allege that a government actor "affirm[ed], authorize[d], encourage[d], or facilitate[d] unconstitutional conduct through its involvement with" Defendants. *See Ohno*, 723 F.3d at 996. The fact that Hollywood was not arrested makes clear that no such joint action could be alleged consistently with Rule 11. *See Collins*, 878 F.2d at 1155 (when complaint alleged that impetus for police action was request by private party and police refused to arrest the plaintiff, the joint action test was not satisfied "as a matter of law"); *see also Peng*, 335 F.3d at 980 (discussing Ninth Circuit decisions and finding "that a single request to the police, without more" [is] not sufficient to establish a claim against a private actor" under Section 1983). The Complaint also does not allege that "the state knowingly accept[ed] the benefits derived from unconstitutional behavior," or indeed, that the government benefited at all, *see Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003), nor is there any tenable basis for doing so, consistently with Rule 11, under the facts alleged. As in *Collins*, the circumstances alleged here, even when assumed to be true, "simply do not establish that the state has so far insinuated itself into a position of interdependence with [Defendants] that it must be recognized as a joint participant in the challenged activity" and, instead, "point to the opposite conclusion." 878 F.2d at 1155 (internal punctuation and citations omitted). As the requisite state

11

action is lacking, the Complaint fails to state cognizable claims under Section 1983, 1985(3), and 1986.

For the reasons set forth above, Plaintiffs have not made the requisite showing of indigency, which in itself warrants denial of leave to proceed on an *in forma pauperis* basis, including with respect to exercising any supplemental jurisdiction over the numerous state law claims alleged in the Complaint.  In addition, the claims alleged in the Complaint to serve as the basis for federal court jurisdiction are defective for the reasons set forth above, for purposes of 28 U.S.C. § 1915(e)(2)(B).  Accordingly, leave to proceed on an *in forma pauperis* basis is not warranted, and the Complaint should be dismissed in full.

12